UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Sunday Williams

        v.                                  Civil No. 15-cv-464-JD
                                            Opinion No. 2016 DNH 132
United States of America


O R D E R

    Sunday Williams filed a petition for a writ of coram nobis,
seeking relief from his conviction in 2004 on a charge of making
a false statement on an application for a passport.  In support
of his petition, Williams alleged that his counsel provided
ineffective assistance by changing Williams's plea without his
consent and by misrepresenting and failing to advise Williams of
the immigration consequences of the plea.  Williams's second
claim, based on the immigration consequences of his guilty plea,
was dismissed in response to the government's previous motion to
dismiss.  The government now moves to dismiss the first claim,
that counsel changed Williams's plea without his consent, and
Williams objects.

Standard of Review

    "[C]oram nobis is an extraordinary remedy, which is
available 'only under circumstances compelling such action to
achieve justice.'"  Murray v. United States, 704 F.3d 23, 28

(1st Cir. 2013) (quoting United States v. Morgan, 346 U.S. 502, 511 (1954)).  To show that he is eligible for a writ of coram nobis, "the petitioner must first adequately explain his failure to seek relief earlier through other means; second, he must show that he continues to suffer a significant collateral consequence from the judgment being challenged and that issuance of the writ will eliminate the consequence; and third, he must demonstrate that the judgment resulted from a fundamental error." Murray, 704 F.3d at 29 (internal footnotes omitted).  "Even if the petition meets all three of the conditions in the coram nobis eligibility test, the court retains discretion to grant or deny the writ, depending on the circumstances of the individual case." Id. 29-30.

## Background[1]

Williams was born in Nigeria and entered the United States on a visa in 1992.  He has lived in the United States since that time.  In March of 1996, he married Nadine Williams, who was born in Jamaica.  The Williamses have three children who were all born in the United States.

---

[1] The background information is taken from the prior order granting the government's first motion to dismiss.

Williams was indicted on a charge of passport fraud in February of 2004 based on a misrepresentation of his citizenship in his passport application.  See United States v. Williams, 04-cr-51-JD (D.N.H. February 19, 2004).  During the change of plea hearing in that case held on July 29, 2004, the court acknowledged that the First Circuit had recently changed the law with respect to venue for cases charging passport fraud and that the case should not have been brought in the District of New Hampshire.  The court asked Williams if, in light of the change in the law, he freely and voluntarily waived his right to be tried in one of the Districts in New York rather than the District of New Hampshire.

In response to the court's question, Williams consulted with his attorney, Richard Monteith.  After discussing the issue with Williams outside the courtroom, Monteith reported to the court that Williams "would like to withdraw that waiver and not go through with this proceeding today."  Transcript, doc. no. 31, at 9.  The court asked if Williams wanted the case dismissed, and Monteith responded, "He does, Judge."  Id. Monteith moved to dismiss the case.

In response, Assistant United States Attorney Rubega asked the court to delay ruling on the motion to dismiss to give the government time to file a superseding indictment to charge

Williams with making a false statement in a passport application in violation of 18 U.S.C. § 1001.  After a discussion about whether a superseding indictment or a new indictment would be necessary to bring the charge under § 1001, Monteith said: "Time is important to Mr. Williams regarding immigration, what's going to happen with that, so I suppose we don't have an objection to a superseding indictment."  Id. at 12.  Monteith also noted that a superseding indictment, as opposed to a new indictment, would avoid having Williams arrested on the new charge.

The court agreed to stay any ruling on Williams's motion to dismiss to allow time for the government to file a superseding indictment.  The government filed a superseding indictment on August 5, 2004, charging Williams with making a false statement on a passport application in violation of § 1001.

Williams pleaded guilty to the charge of making a false statement on October 14, 2004.  During the hearing, Williams admitted the factual allegations read by the court to support the charge against him.  Rubega then read the facts the government would prove if the case went to trial.  Monteith did not object to the facts as read, and Williams also accepted the facts as read by Rubega.

When asked by the court if he had any questions about the proceedings, Williams said that he had no objection but noted that "the Immigration matter is pending."  Monteith explained that Williams had immigration hearings pending in New York. Williams agreed that the New York hearings were the immigration matter to which he referred.  The court then accepted Wiliams's plea.  Williams was sentenced on January 14, 2005, to three years of probation.

Williams's wife became a United States citizen in 2010. When Williams applied for lawful permanent resident status based on his marriage to a citizen, his application was denied based on the facts underlying Williams's guilty plea in 2004, which included a false claim of United States citizenship.  Williams has not been deported because of the current conditions in Nigeria.

In this case, Williams alleged two claims to support a writ of coram nobis.  The second claim has been dismissed.  In the first claim, Williams contends that Monteith provided ineffective assistance of counsel because he "sua sponte changed [Williams's] plea by agreeing to allow the government to file a superseding indictment—instead of having the charge dismissed— without asking [Williams] or explaining what that meant."  As a result, Williams had to defend the charge under § 1001 in the

superseding indictment in New Hampshire instead of defending a charge of passport fraud in New York, where he lived.

## Discussion

The government moves to dismiss the first claim, that Monteith provided ineffective assistance by changing Williams's plea without his consent, on the grounds that Williams has not explained the delay in raising the claim and that he did not receive ineffective assistance of counsel.  Williams opposes the motion to dismiss.  He contends that the motion is procedurally improper, that he has alleged ineffective assistance of counsel, and that the delay is due to the effect of recent events on his understanding of the immigration consequences of the plea.

A.   Second Motion to Dismiss

Williams contends that the government is not allowed to file a second motion to dismiss and urges the court to deny the motion on that ground.  The government did not file a reply and, therefore, did not respond to Williams' procedural challenge. Although Williams raises potentially valid reasons to avoid successive motions to dismiss in some § 2255 cases, in this case, the government's motion asserts that Williams fails to state a claim for relief through a writ of coram nobis, which

will be considered to avoid unnecessary further litigation and
expenditure of resources.

B.  Delay

    "The writ of habeas corpus historically has served as the
principal vehicle for testing the legality of executive
detentions." Trenkler v. United States, 536 F.3d 85, 96 (1st
Cir. 2008).  For a petitioner challenging a federal sentence,
"[t]he strictures of section 2255 cannot be sidestepped by the
simple expedient of resorting to some more exotic writ." Id. at
97.  To qualify for relief under a writ of coram nobis,
therefore, a petitioner first must show why he did not seek
relief earlier by another means such as during proceedings in
the criminal case, on direct appeal, or by a petition under §
2255.  See Cruzado-Laureano v. United States, 146 F. Supp. 3d
445, 449-50 (D.P.R. 2015).

    Although Williams characterizes his claim as ineffective
assistance of counsel because his counsel changed his plea
without his consent, that is a misinterpretation of the
circumstances alleged.  Counsel did not change Williams's plea
without his consent.  Instead, counsel agreed to allow the
government time to file a superseding indictment to charge a
violation of § 1001 rather than requiring the court to grant the

motion to dismiss the passport fraud charge.  Williams then
pleaded guilty to charge in the superseding indictment.

There is no dispute that Williams knew at his change of
plea hearing held in July of 2004 that his counsel agreed to the
government's proposal to delay ruling on Williams's motion to
dismiss in order to allow time for a superseding indictment.  He
did not challenge that decision then or at any time until the
current petition.  He also knew that the government filed a
superseding indictment charging a violation of § 1001 in August
of 2004 and that he pleaded guilty to that charge in October of
2004.  Williams argues, however, that he did not challenge his
counsel's decision to allow the superseding indictment, rather
than pursuing the motion to dismiss, until he realized the
collateral consequences of his guilty plea when his application
for a green card was denied in 2014.

Williams does not contend that the requirements for a green
card changed after his guilty plea or that any other
circumstances prevented him from understanding the consequences
of his guilty plea when the plea was given.  Instead, he argues
that he did not realize the negative consequences of the guilty
plea until the application was denied and he retained new
counsel.  He argues that he then learned his counsel had changed
his plea without his consent.

Williams's theory is contrary to the facts.  He did know that counsel agreed to the superseding indictment, and he did know that he pleaded guilty to making a false statement on an application for a passport.  Williams's arguments that counsel misrepresented the immigration consequences of his plea do not support this claim.[2]

Therefore, Williams has not adequately explained the delay in challenging his counsel's representation.

C.   Fundamental Error

The government also contends that Williams cannot show a fundamental error to support a writ of coram nobis.  Williams argues that his counsel's decision, without his consent, to allow time for the government to file a superseding indictment, rather than dismissing the indictment immediately, was ineffective assistance of counsel that caused prejudice, constituting a fundamental error.

"To succeed with a claim of ineffective assistance of counsel, a criminal defendant must establish both that his attorney's performance was deficient under an objective standard of reasonableness and that his defense suffered prejudice as a

_____

[2] As explained in the prior order, the immigration issue Williams raises is not deportation, which is addressed in Padilla, but his eligibility for a green card.

result." Rivera-Rivera v. United States, --- F.3d ---, 2016 WL 3546406, at *2 (1st Cir. June 29, 2016). Representation is constitutionally deficient only if "counsel made errors so serious that 'counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.'" United States v. LaPlante, 714 F.3d 641, 648 (1st Cir. 2013) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). Prejudice requires a showing that the result of the criminal proceeding would have been different if counsel had done what the defendant claims should have been done. Rivera-Rivera, 2016 WL 3546406, at *2.

Williams contends that counsel provided ineffective representation when he agreed, without Williams's consent, to allow the government time to file a superseding indictment.[3] Williams states in his affidavit that he wanted counsel to have the case dismissed and did not consent to the superseding indictment. He did not raise that concern at the hearing or afterward.

At the hearing, the government made clear that it would file a new indictment in New York if the court granted Williams's motion to dismiss, but preferred to have time to file

---

[3] As noted above, Williams characterizes that situation as changing his plea without his consent, which misrepresents the circumstances.

10

a superseding indictment in the New Hampshire case.  Williams's counsel agreed to allow time for the superseding indictment to avoid the delay that a new indictment would entail.  Counsel believed that the delay would be detrimental to Williams's immigration proceedings in New York.

As such, Williams's counsel made a tactical decision to avoid delay.  While Williams says he does not understand the need to avoid delay, he has not shown that his counsel's tactical choice was not valid.  Counsel are afforded "wide latitude" in making tactical decisions while representing criminal defendants.  See United States v. Caparotta, 676 F.3d 213, 220 (1st Cir. 2012).  Therefore, Williams has not shown constitutionally deficient performance.

Williams also has not shown prejudice.  Even if counsel had not agreed to allow the superseding indictment and instead the indictment had been dismissed, Williams does not contest that he would have been reindicted in New York for passport fraud.  Although Williams argues that defending the charge would have been easier for him in New York because he lived there, he does not show that the result would have been different.

## Conclusion

For the foregoing reasons, the government's motion to dismiss (document no. 15) is granted.

11

The clerk of court shall enter judgment accordingly and close the case.

The court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c).

SO ORDERED.

Joseph DiClerico, Jr.
United States District Judge

August 10, 2016

cc:  Seth R. Aframe, Esq.
     Jonathan Cohen, Esq.
     Paul F. O'Reilly, Esq.
     Jacob Max Weintraub, Esq.